JAMES F. JOY, SULLIVAN M. CUTCHEON, AND HELEN M.
MOORE, EXECUTORS, ETC., v. EMERSON
VANCE ET AL.

*Principal and agent—Estoppel—Payment of mortgage—Notice.*

1. The owner of property cannot be held estopped from deny-
ing the authority of an assumed agent to act with reference
thereto where the person dealing with such agent is ignorant
of the owner's claim to such property.

2. The fact that the holder of a mortgage, while retaining the
securities in his possession, forwards the coupon interest notes
to a third party for collection from time to time, as they
mature, does not, as a matter of law, constitute such party an
agent for the collection of subsequent installments of interest
or of the principal.

3. Where a mortgagor pays the mortgage to one who has never
held the legal title thereto, either as mortgagee or assignee,
and who does not have the mortgage papers in his possession,
it is immaterial, in a suit brought by an assignee to foreclose
the mortgage, that the mortgagor, at the time of such pay-
ment, had no notice of the assignment.

Appeal from Clinton. (Daboll, J.) Argued January
24, 1895. Decided February 12, 1895.

Bill to foreclose a mortgage. Complainants appeal.
Decree reversed, and one entered in this Court as prayed.
The facts are stated in the opinion.

*Cutcheon, Stellwagen & Fleming,* for complainants.

*Perrins & Baldwin,* for defendants Vance.

HOOKER, J. The complainants purchased a mortgage
and four accompanying notes from Walker & White. As
the interest notes came due, they were sent to the Michi-
104 MICH.—7.

| | |
|---|---|
| 104 | 97 |
| 105 | 495 |
| 105 | 600 |
| 104 | 97 |
| 108 | 553 |
| 104 | 97 |
| 110 | 584 |
| 104 | 97 |
| 112 | 668 |
| 104 | 97 |
| 114 | 680 |
| 104 | 97 |
| 118 | 147 |
| 104 | 97 |
| 122 | 527 |

gan Mortgage Company for collection.   With the last of these was sent a letter of which a copy follows:

"DETROIT, MICH., Feb. 25, '91.
"MICHIGAN MORTGAGE CO., LIM.,
              "St. Johns, Mich.
  "*Gentlemen:* Inclosed you will find, for collection, inter-est coupon of James D. Estes for $52.50, due at your office Feb. 24, '91; also interest coupon of Emerson Vance for $130, due at your office Feb. 28, '91.   Please receive these amounts, and remit to me.
  "The Emerson Vance mortgage becomes due the 28th inst.   Does he wish to pay it?   If so, we will prepare a discharge, and send to you.
                        " Yours truly,
                              "S.  M.  CUTCHEON, Ex.
                                   "F."

The principal was not paid, and in February, 1892, the interest was collected as before, upon a request by letter from the complainants to the Michigan Mortgage Company. On February 22, 1893, the following letter was sent by com-plainants to the Michigan Mortgage Company, viz.:

                        "DETROIT, MICH., Feb. 22, '93.
"MICHIGAN MORTGAGE CO., LIM.,
              "St. Johns, Mich.
  "*Gentlemen:* On the 24th inst. there will be due this estate six months' interest upon mortgage of James D. Estes, amounting to fifty-two dollars and fifty cents ($52.50). The principal of the mortgage becomes due the same time. Does Mr. Estes wish to continue the loan?
  "On Feb. 28 there will be due one year's interest upon mortgage of Emerson Vance to this estate, amounting to one hundred and thirty dollars ($130.00).
  "May I trouble you to collect these notes, and remit to me, and greatly oblige.
                        "Yours truly,
                              "S.  M.  CUTCHEON, Executor.
                                   "F."

  'On March 11, 1892, Vance paid the mortgage, taking the receipt of the Michigan Mortgage Company in full.

The interest was paid to the complainants in October, 1893. They never received the principal, and the Michigan Mortgage Company soon after failed. Complainant subsequently filed a bill for foreclosure, making Vance and wife and Walker & White parties. Vance asserts payment by way of defense.

The mortgage and notes were made payable to Walker & White at their office in St. Johns. The Michigan Mortgage Company succeeded to their business, they being loan agents, and seems to have been conducted by them at their former office. Vance testified that he had no notice of the assignment of the mortgage, and that he paid it to the Michigan Mortgage Company, at its place of business. The complainants allege that the receipt taken at the time apprised him of the fact that the mortgage belonged to the Moore estate. It is as follows:

"$2,005.          St. Johns, Mich., March 11, '92.
"Received of Emerson Vance $2,005, in payment in full of his mortgage to the Moore estate, and interest to date.
"Michigan Mortgage Co., Lim.
"By Theo. Price."

Inasmuch as the mortgage was not paid to Walker & White, but to the Michigan Mortgage Company, as Vance himself testifies, it is not important whether he had notice or not. Had he paid to Walker & White in ignorance of the transfer, this question might have been important, but the case does not turn upon his right to pay to them, but upon his right to pay to the mortgage company. And, as Vance says that he did not know of the complainants' ownership, there is no estoppel which would preclude their denial of the agency. He was not misled by them, but, if at all, by the acts of the Michigan Mortgage Company. The case is reduced, therefore, to the single question of the authority of the Michigan Mortgage Company to receive the money upon the mortgage. Unless we are to say that the

collection of the interest through this company, from time to time, constituted it an agent for the collection of subsequent installments of interest and the principal, we cannot deny complainants the relief sought. Vance admits he paid the interest to the company without taking the trouble to ascertain whether it had the mortgage or who owned it. When he paid the mortgage, he was satisfied with the statement that the mortgage was mislaid, although he received a receipt which indicated that it did not belong to the company to which he was paying it. It was perhaps the natural thing for him to pay it, in reliance upon the statement of these men with whom he was acquainted and in whom he had confidence; but his rights must depend upon their authority to receive the money, not upon his confidence in them.

Defendants' counsel claim that there was a general authority to collect from the fact that Mr. Cutcheon was in the habit of having this company make collections for his clients, including this estate, for which he had purchased several mortgages from the company. The authority of the company does not depend upon the amount of business done by it for the complainants, but upon the character and extent of the employment, as evidenced by the express authority conferred and the method of their dealing with it. *Campbell v. Sherman*, 49 Mich. 536. So far as shown, Mr. Cutcheon retained the custody of his papers, sending from time to time specific authority and directions for the performance of particular and designated acts. We search the record in vain for evidence that he gave a general authority to collect mortgages purchased or held by him. He found them profitable business acquaintances, for they had mortgages which he wished to buy; but he appears to have carefully managed the collections in a way which enabled him to keep track of them, as a prudent lawyer should for clients who confide their busi-

ness to him.    He had a right to suppose that the mortgagor would not pay notes or mortgage without receiving them, and by keeping them in his own hands he interposed the only practical obstacle to the perpetration of a fraud by the mortgage company.    Had the mortgagor been as careful to ascertain the authority of the company as the complainants were to restrict it, no one would have suffered.    As it is, the loss should fall upon him, and not upon the complainants, who are in no way responsible for it.

The decree of the circuit court must be reversed, and one entered here for the complainants, as prayed in the bill, with costs of both courts.

LONG, GRANT, and MONTGOMERY, JJ., concurred.  MC-GRATH, C. J., did not sit.