| 108 | 547 |
| 110 | 284 |
| 108 | 547 |
| 114 | 682 |
| 108 | 547 |
| 117 | 651 |
| 108 | 547 |
| j122 | 529 |

## WILSON *v.* LA TOUR.

PRINCIPAL AND AGENT—AUTHORITY TO COLLECT MORTGAGE.

   A mortgage company is impliedly authorized to receive payment of the principal of a mortgage which is in the possession of the mortgagee, where the latter has instructed it to inform the mortgagors in mortgages owned by her, including that in question, that they must pay at once or the mortgages will be foreclosed, and the company has been accustomed to collect the principal of her mortgages, and remit the sums collected to her upon receipt from her of a discharge of the mortgage together with the original papers.

Appeal from Otsego; Sharpe, J. Submitted January 8, 1896. Decided March 11, 1896.

Bill by Otis B. Wilson against Elizabeth A. La Tour to compel the discharge of a mortgage. From a decree for complainant, defendant appeals. Affirmed.

*Lyon & Dooling*, for complainant.

*Fedewa & Walbridge*, for defendant.

MOORE, J. Complainant has owned and resided upon a farm situated in Otsego county for the last 14 years. August 26, 1886, he executed and delivered to Walker & White, a firm engaged in the loaning business at St. Johns, Mich., his note of $350, due October 1, 1891, with interest; both principal and interest payable at their office in St. Johns. The interest was represented by 10 coupons, of $12.25 each, and accompanying them were 10 other (commission) coupons, of $1.75 each, due at the same times. To secure the payment of the note, complainant gave a mortgage on his farm, the mortgage being duly recorded in Otsego county. Walker & White assigned the mortgage and note to Jeanette L. Tefft on

November 29, 1886, by written assignment duly recorded in Otsego county. Mrs. Tefft died before receiving any interest on the mortgage, and her executors assigned the note and mortgage to defendant, who resided in Buffalo, N. Y., April 22, 1887, and said assignment was duly recorded in Otsego county. Walker & White notified complainant, from time to time, of the maturity of his interest, collected and remitted it to defendant, and sent complainant his canceled interest coupons. In September, 1889, they were succeeded in business by the Michigan Mortgage Company, Limited, of which company they were the leading officers, and had charge of its affairs. From that time the mortgage company held substantially the same relations towards both parties that Walker & White had held. Complainant had no notice of the transfer of the note and mortgage, except that he knew that Walker & White were succeeded by the mortgage company, and always supposed they or the company still owned them. On March 22, 1893, he sent the company a draft of $364.10, which covered the principal, of $350; interest to April 1, 1893, $12.25; exchange, 10 cents; and commission, $1.75. The company acknowledged the receipt of the money in full payment of the mortgage, and advised complainant they had sent for the discharge thereof, and, as soon as received, would forward it to him. The mortgage company placed the principal sum of $350 to the credit of defendant on its books, and on the same day notified defendant of the payment of the money, sending her a discharge of the mortgage to execute and return with the canceled papers pertaining to the Wilson loan, and advised her that upon the receipt of the same they would remit. For some reason defendant failed to send the discharge or the canceled papers, or to reply to the company's letter. The mortgage company failed on February 6, 1894, and receivers were appointed. In the following April, complainant first learned that defendant claimed to own the mortgage in question, and filed his bill to cancel the note and discharge the mortgage and

assignments from record, claiming that the payment made to the mortgage company was a payment of the mortgage debt. The defendant appeared, and insisted that the mortgage company had no authority from her to receive payment of the mortgage, and claimed the mortgage to be a subsisting lien upon the land. The circuit judge made a decree in accordance with the prayer of the complainant, and defendant appeals.

All of the business was done by correspondence. There were originally 16 mortgages running to Walker & White which were assigned to Jeanette L. Tefft, and, upon whose death, became the property of defendant. The amount of the mortgages was $11,900. The record shows that, soon after the defendant became the owner of these mortgages, she applied to Walker & White to collect the interest as rapidly as it matured, and that either Walker & White, or the Michigan Mortgage Company, as their successor, collected all of the interest that accrued upon these mortgages up to the time of the failure of the company. The total amount of interest collected and remitted during this time was $3,836.97, of which Walker & White collected and remitted $1,986.44, and the Michigan Mortgage Company collected and remitted $1,850.53. The record also shows that, of the principal of the mortgages, Walker &. White collected and remitted to defendant $650, and the Michigan Mortgage Company collected and remitted $9,650. In addition, the company collected the principal of the mortgage in question, $350, making a total of $10,650 collected.

A large amount of correspondence was received in evidence between the defendant and Walker & White and the Michigan Mortgage Company in relation to their conduct of the business of Miss La Tour, in which she urges them to collect the mortgages of which we have before spoken. This correspondence indicates very clearly that her request was acceded to; that Walker & White, and afterwards the Michigan Mortgage Company, did receive payments of these mortgages when the mortgages and

notes were in the hands of Miss La Tour, and upon their request she forwarded the notes and mortgages to them, with the necessary discharge papers, showing that she had knowledge of their method of doing business, and approved of it. In August, 1891, she asked the mortgage company to notify a number of the mortgagees that their mortgages would soon be due, and, among others, the mortgage of Otis B. Wilson, for $350, in October. In September she requested a report on the Wilson mortgage. In October, 1891, she wrote the company, calling attention to the fact that she had over $3,800 due her for interest and principal on the mortgages, called their attention to the Wilson mortgage, and added:

"Miss La Tour wishes these parties informed that she will not renew or extend the time on these mortgages. Miss La Tour would like to hear from you, and, *if you send discharge of mortgages, will send you the papers.*"

Replying to that letter on October 14, 1891, the company wrote:

"We hand you discharge of the Martin mortgage, which please have executed, and return with the canceled papers, and we will remit therefor. In reference to the Wilson mortgage, would say that Mr. Wilson paid his interest promptly, and asked for a short time on the principal."

Defendant sent the Martin papers as requested, and received remittance to cover the same.

On November 2, 1891, defendant wrote the company:

"All of the mortgages Miss La Tour has (10 in number) are now due, or will be by December 1st. She has been very patient with these parties, but now, as she has other use for her money, will require a settlement by the 1st of January, and those that are not closed up by that time she will place in her lawyer's hands. You can let these different parties know of her intentions, so that they can fix their affairs accordingly."

Replying thereto on November 4, 1891, the company wrote:

"Replying to yours of November 2d, would say that *we are looking after your matters, and collecting them in as promptly as possible; and if you will give us such time as we need in the course of business, to collect in, we shall be able to collect all of the interest, together with the principal, without costs of any kind.*"

On November 11, 1891, the company wrote defendant:

"Inclosed we hand you discharge of the Bergenzer mortgage, which please execute and return to us with the canceled papers, and we will remit for the same."

In reply thereto, under date of November 16, 1891, the defendant sent the papers, and shortly thereafter received a draft of $2,369 in payment thereof.

On December 4, 1891, the company wrote the defendant:

"Inclosed we hand you discharge of the John W. Saunders mortgage, which please execute and return to us with the old papers, and we will remit for the same."

Defendant complied with that request on December 5, 1891.

On December 5, 1891, the company wrote defendant to send the Staley papers, and that it would foreclose that mortgage for her. On December 7, 1891, defendant complied with that request, and they commenced the foreclosure.

On December 28, 1891, defendant wrote in reference to the Saunders and Staley mortgages, and added: "There are seven other mortgages that have expired. *Tell these parties to either pay up*, or we must foreclose at once. They are as follows." And the list included the Wilson mortgage, in question. She also added, "Please attend to this, and let me hear from you at once." Replying to that letter, the company wrote: "Replying to yours of the 28th, would say that we have not forgotten your matters.. *We are giving them careful attention, and will report payment of the same as fast as they are ready.*"

On January 19, 1892, defendant wrote the company

in reference to certain mortgages, and added, "Let us know what the prospects are, for we are getting very tired of waiting for money which is long due." Replying thereto on January 21, 1892, the company wrote, among other things, "*We are looking after your matters to the best of our ability.*"

On January 21, 1892, the company wrote the defendant in reference to the Brown mortgage, and advised her that it had been paid, and added:

"We are glad to inclose discharge thereof, which please have executed, and return to us with the canceled papers, and we will remit at once, by return mail."

Defendant complied with this request on January 23d, and two days later draft was sent to cover that money.

On January 22, 1892, the company wrote defendant:

"We hand you discharge of the Charles A. Butler mortgage, which please have executed, and return to us with the old papers, and we will remit therefor."

Defendant complied with this request on January 27th, and two days later a draft was sent her to cover the money.

On February 4, 1892, the company wrote defendant:

"Inclosed we hand you discharge of mortgage, Thomas W. Robinson, which please execute and return to us with the old papers, and we will remit therefor."

The request was complied with, and on February 9, 1892, a draft was sent her in payment therefor.

On April 13, 1892, the company wrote the defendant, in reply to a letter which does not appear in the record:

"*As we have done in the past, we shall continue to get your matters cleaned up as fast as possible. Chadderton and Wilson will be arranged for at an early date.*"

On June 13, 1892, defendant wrote the company:

"Please inform me what prospect there is for a settlement of the other mortgages of Miss La Tour's. She

needs the money, and is getting impatient by the slow course these parties are taking."

On October 17, 1892, the company wrote defendant as follows:

"Some few days ago we wrote you concerning the William Chadderton mortgage, past due. Mr. Chadderton has arranged this matter with us, and we now hold the funds to pay the same, subject to your order. Will you kindly send the papers for collection, and execute the inclosed discharge? Upon receipt of the same, we will remit you for principal and accrued interest."

On November 5, 1892, the company sent defendant a draft of $937.10 in payment of the Chadderton mortgage and interest.

On March 23, 1893, the company wrote defendant:

"Inclosed we hand you discharge of the O. B. Wilson mortgage, which please execute and return with the canceled papers, and we will remit for the same."

The record shows some correspondence between the defendant and the company after this time, but for some reason she appears never to have replied to that letter. It is conceded by her counsel that she received it, and the record shows that, of the principals of the 13 mortgages collected for her before that time, she had been notified in substantially the same manner, had complied with the request of the company to forward the papers and an executed discharge in each case, and in each case had received her money.

We have thought best to quote this testimony somewhat at length, as counsel claimed this case is governed by *Joy* v. *Vance*, 104 Mich. 97, and *Trowbridge* v. *Ross* and *Ross* v. *Trowbridge*, 105 Mich. 598. We think this case is not governed by those, for the reason that it is difficult to escape the conclusion, from the testimony, that the defendant instructed the Michigan Mortgage Company, Limited, to notify the mortgagors that these mortgages must be paid, and authorized it to receive payments, and knew that from time to time payments were

made to the company on these mortgages, and approved of its receiving the money, and, at its request, forwarded the notes and mortgages, with a proper discharge. The trial judge found from the testimony that the Michigan Mortgage Company, Limited, was authorized to receive payment of the Wilson mortgage. We agree with the trial court.

The decree is affirmed, with costs.

The other Justices concurred.