CHURCH ASSOCIATION OF MICHIGAN *v.* WALTON.

PRINCIPAL AND AGENT — AUTHORITY TO COLLECT MORTGAGE — GENERAL PRACTICE—EVIDENCE.

> Evidence that one to whom certain mortgages were assigned made it a practice to collect the interest and principal of such securities through a firm composed of his assignors, and later through a mortgage company in which they were the managing stockholders, either by express direction to make such collections in particular cases or by sending papers and discharges when informed that payments had been made, does not establish a general agency on the part of the mortgage company to collect all funds due the assignee, so as to render the latter bound by a payment to the company of the principal of a mortgage which it had no express authority to collect, and for which it failed to account.

Appeal from Clinton; Daboll, J. Submitted October 5, 1897. Decided November 17, 1897.

Bill by the Church Association of Michigan against Edward Walton, William Haley, Samuel S. Walker, and

Edwin E. White, to foreclose a mortgage. From a decree dismissing the bill, complainant appeals. Reversed.

*John H. Bissell*, for complainant.

*Fancher & Sangster*, for defendants Walton and Haley.

HOOKER, J. The bill in this cause was filed to foreclose a mortgage given by defendant Walton to Walker & White, of St. Johns, to secure his promissory note, which mortgage and note were assigned by them to the complainant, the amount claimed being $1,600, with interest at 6 per cent. from November 12, 1892. Walton filed an answer, alleging payment, and praying as affirmative relief that the complainant be required to execute and deliver a discharge of the mortgage. Defendant Haley filed a separate answer, claiming to be the owner of a later mortgage upon the premises, alleging payment of complainant's mortgage, and asking that it be discharged.

The undisputed evidence shows that at the time the mortgage was given, viz., in 1887, Walker & White were dealers in mortgage securities, having an office at St. Johns, Mich., where the complainant's mortgage was made payable. About October 1, 1889, they sold and transferred their business to the Michigan Mortgage Company, Limited, of St. Johns, and said company succeeded to their business in the office previously occupied by them. Walker and White were stockholders and members of the managing board of said company until February, 1894, when it made an assignment for the benefit of the creditors. John H. Bissell, Esq., of Detroit, was complainant's treasurer during the period covered by these transactions, and had charge of its investments. The interest coupon notes accompanying the mortgage were collected through the Michigan Mortgage Company, being forwarded yearly by Bissell. About November 25, 1892, the defendant Walton paid to the Michigan Mortgage Company the amount then due upon the mortgage. The defendant Walton was unaware that the mortgage

had been assigned. On November 13, 1892, defendant Walton received the following letter:

"*Dear Sir:* We inclose canceled coupons (4). We note your mortgage matures with next payment of interest, and, if at that time you are not prepared to pay, we shall be glad to extend it for you.

"Respectfully,
"MICHIGAN MORTGAGE Co., Lim.,
"By E. E. WHITE, Treasurer."

Walton thereupon sent a draft to the Michigan Mortgage Company, and received the following letter in response:

"November 25, '92.

"We have your favor of the 22d, inclosing draft, $1,734.28, in payment of your mortgage, and in due time will send you the canceled papers. We hand you herewith the canceled coupons (5).

"Respectfully,
"MICHIGAN MORTGAGE Co., Lim.,
"By E. E. WHITE, Treasurer."

The correspondence continues as follows:

"MT. PLEASANT, MICH., January 21, '93.
"MICHIGAN MORTGAGE Co.:

"Will you please send me the discharge of mortgage at once, as I am waiting for it, and oblige,

"Yours truly,
"EDWARD WALTON."

"January 23, '93.

"*Dear Sir:* We have yours of the 21st in reference to the discharge of your mortgage, and we are obliged to you for calling attention to the matter.

"Respectfully,
"MICHIGAN MORTGAGE Co., Lim."

Walton was unacquainted with the officers of the mortgage company, having never met them or been at their office; and the loan was negotiated through, and some, if not all, of the interest was paid to, Mr. William Dodds, of Mt. Pleasant, near which place Walton resided upon the mortgaged premises. Walton paid the interest to Dodds, who transmitted it to the mortgage company,

and delivered the coupons to Walton when received. At the time the principal was paid, the mortgage and note were in Bissell's custody, where they had been from the time when they were assigned. The money paid to the mortgage company never came to the hands of Bissell.

The following quotation from *Joy* v. *Vance*, 104 Mich. 97, is applicable here:

"Inasmuch as the mortgage was not paid to Walker & White, but to the Michigan Mortgage Company, as Vance himself testifies, it is not important whether he had notice or not. Had he paid to Walker & White in ignorance of the transfer, this question might have been important; but the case does not turn upon his right to pay to them, but upon his right to pay to the mortgage company. And, as Vance says that he did not know of the complainants' ownership, there is no estoppel which would preclude their denial of the agency. He was not misled by them, but, if at all, by the acts of the Michigan Mortgage Company. The case is reduced, therefore, to the single question of the authority of the Michigan Mortgage Company to receive the money upon the mortgage."

A long correspondence between Bissell and the mortgage company and its predecessors, Walker & White, is found in the record, from which it appears that Bissell had much business with these concerns for himself and clients, including the complainant. Most, if not all, collections of interest and principal upon such securities as were procured from them, were made through them, either by express direction from Bissell to make them in individual cases, or by sending papers and discharges when informed that they had been paid. It is contended that this shows that Bissell had authorized the collection of all funds due to himself and clients. As was said in *Joy* v. *Vance*, the sending of different securities for collection does not give general authority to make collections, or justify a debtor in concluding that a general authority to collect exists; and, as expressed by Mr. Justice MONTGOMERY in *Bromley* v. *Lathrop*, 105 Mich. 496:

"As before stated, the fact that the interest was collected from time to time by the Michigan Mortgage Com-

pany was not sufficient to justify an inference of authority to receive payment without the surrender of the securities. We think the complainant had the same right to assume that the defendant was treating the Michigan Mortgage Company as his agent, as defendant had to assume that the company represented complainant."

To support the defendants' claim, it must appear either that express authority to receive the payment was given, or that the dealing between the parties—*i. e.*, Bissell and the mortgage company—was such as to justify the conclusion that it was understood between them that the company had authority to bind the complainant by accepting payment. As no express authority is shown, it is necessary that we find that Bissell had authorized the company to receive money upon any or all of the past-due paper which Bissell had received for himself or clients through the company or Walker & White.

The claim is supposed to be justified by the voluminous correspondence which passed between Bissell and the mortgage company, from which it appears that it was his uniform practice to collect interest through the company, and make collections of principal through foreclosure if not paid at maturity. We think that it does not follow. The mortgage company was a concern which dealt in mortgages. Applications were made to it, or through it to others, for loans. Presumably it was interested in keeping track of such loans, for its own benefit. Its patrons, borrowers as well as lenders, probably had confidence in it, and perhaps found it convenient to pay through the company to owners of securities who lived elsewhere. There is evidence that the company sometimes took second mortgages to secure its compensation, which appears to have come from the mortgagors, and not from the holders of securities taken. As intimated by Mr. Justice MONTGOMERY in *Bromley* v. *Lathrop*, 105 Mich. 492, it may be that there is as much reason for assuming, from the bare fact that money was paid, that the company was the agent of the borrower as the lender, and the subsequent acceptance of

the money by Bissell, and the discharge of the mortgage, would not change the relation. Many of the letters apply to such cases. Others show that the mortgage company was authorized to collect specified claims. Mr. Bissell was in the habit of keeping the mortgages and papers in his possession, and indicating the disposition of them. In *Wilson* v. *La Tour*, 108 Mich. 547, upon which defendants' counsel rely, we were able to say that there was tangible evidence that the defendant had directed the mortgage company to press her debtors for payment *upon all of her mortgages*, and to receive payment. Such is not the case here. The case is within the principles laid down in the other cases mentioned.

The decree of the circuit court is reversed, and one will be entered here in accordance with the prayer of the complainant's bill; the amount of said decree to be $1,600, with interest at 6 per cent. from November 12, 1892, to be computed in accordance with the terms of the mortgage. Complainant will recover costs of both courts.

The other Justices concurred.