## CHESANING STATE BANK *v.* BRANTON.

1. PRINCIPAL AND AGENT—MORTGAGOR MAKING PAYMENTS TO ONE NOT AGENT OF MORTGAGEE MUST BEAR LOSS SUSTAINED.

    A mortgagor who continued to pay interest and principal to a private banker after the mortgage and note had been assigned, assignment recorded, and papers transferred to the assignee, who kept them in its possession, must bear the loss sustained through the dishonesty of the banker, who forwarded the interest to the assignee each year, but kept the payments on the principal; he not being the agent of the assignee to receive said payments.[1]

2. SAME—WHERE MONEY CONVERTED BEFORE PAPERS CAME INTO HANDS OF ONE RECEIVING IT HE WAS NOT THEREBY MADE AGENT.

    Nor did the fact that the assignee, after the final payment on the principal had been made, at the banker's request, sent a discharge with instructions not to turn the papers over to the mortgagor until the mortgage and charges had been paid, constitute him an agent of the assignee as to said payments, on the theory that he had the money in his hands to pay the mortgage at the time he had the discharge papers in his hands, since the inference is that he had converted the money as he had received it from time to time rather than that he held it and converted the lump sum; his statement that he had the money being hearsay as to the assignee.[2]

Appeal from Sanilac; Boomhower (Xenophon A.), J. Submitted January 8, 1926. (Docket No. 80.) Decided March 20, 1926.

Bill by the Chesaning State Bank against Thomas Branton and others for the foreclosure of a mortgage. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

[1] Mortgages, 27 Cyc. p. 1516; [2] Id., 27 Cyc. p. 1516.

*Charles W. Cheeney,* for plaintiff.

*Robert J. West,* for defendants.

FELLOWS, J.    On November 12, 1909, defendant Thomas Branton executed to his father, William Branton, Sr., a note for $1,800 secured by a real estate mortgage on a farm in the township of Sanilac in Sanilac county, which he that day purchased from his father.    The note was payable on or before 10 years after date with interest at 7 per cent. payable annually on the 1st day of April of each year at the Exchange Bank of M. N. Mugan, Port Sanilac, near which town the farm was located.    This bank was a private bank. William Branton, Sr., kept his papers there until he moved to Chesaning, when he took the mortgage, which had been recorded, with him.    On July 11, 1916, he assigned and transferred the mortgage and note to plaintiff for its face value, there having been no payments on the principal and the interest having been kept up.    The assignment of the mortgage was recorded the following day.    Plaintiff purchased in entire good faith.    It claims to have promptly notified defendant Thomas of its purchase, but the testimony on that subject is hearsay and we do not consider it. There is competent testimony, however, that annually it sent notice to defendant Thomas at Port Sanilac about two weeks before the interest was due, but Thomas denies receiving any of these notices before the spring of 1922, and shows his postoffice was another town.    Each year at about the time interest was due plaintiff received a draft of the Exchange Bank for the interest and receipted for the same.    March 31, 1921, plaintiff received a telegram from the Exchange Bank saying that defendant Thomas desired to pay the mortgage and requesting it to send discharge and abstract.    Plaintiff complied with the request but directed that the papers be not turned over

until the mortgage and the charges of the Exchange Bank were paid. A short time later it received from the Exchange Bank the interest and later at its request the mortgage and other papers were returned to it. In reply to its notice, sent in the spring of 1922, that interest was due, Thomas wrote them he had paid the mortgage to the Exchange Bank and informed them that his address was at Croswell. The proof conclusively establishes that he had in fact paid to the Exchange Bank of Mugan the full amount of both principal and interest, the payments on principal being as follows: April 2, 1917, $300; April 1, 1918, $300; April 7, 1919, $500; April 5, 1920, $500; August 31, 1920, $200.

It will be noted from this statement that when plaintiff bought the mortgage no payments had been made on the principal and that it had the mortgage in its possession when defendant made such payments to Mugan's private bank; so that we have not a case of payment to the holder having actual possession of a negotiable instrument. Mugan did not have the mortgage or note in his possession when any of the payments were made, nor until long after, when he requested that it be sent so that defendant could pay it. Had defendant made payment to Mugan upon presentation by Mugan of the note, mortgage, and discharge, another question would be before us. The trial judge seems to have found as a fact that the money was in Mugan's hands to pay the mortgage when at his request and when apparently he was acting for defendant, plaintiff sent him the papers, and to have concluded that such fact was decisive of the case. But the only testimony bearing on that subject was testimony that Mugan had so stated, and this was hearsay as to the plaintiff. Defendant gave testimony that Mugan had repeatedly lied to him and the inference is much stronger that Mugan converted the

money as it was paid to him than it is that he kept it together for years and finally converted the lump sum.

The plaintiff promptly recorded the assignment of the mortgage to it, thus giving notice to the world that it was the owner; it retained possession of it in its vaults. Its entire good faith in the transaction can not be questioned on this record. It has been paid no part of the principal of the mortgage. In the final analysis we must hold, in order to defeat its right to a decree of foreclosure, that Mugan operating under the name of the Exchange Bank was its agent to receive these payments either actually or by holding out or by estoppel to deny such agency. That he was actually made the agent of plaintiff to receive such payments can not be sustained upon this record. Nor do we understand defendant's counsel to claim that there was an actual appointment of Mugan as plaintiff's agent. It would likewise be difficult upon this record to find any testimony tending to show that he was held out to defendant by plaintiff as its agent. Indeed it is defendant's claim that he did not know that plaintiff owned the mortgage; in the main his testimony indicates that he supposed his father still owned the mortgage, although he did state that he thought Mugan owned it all the time.

Upon the other questions we are persuaded that the cases in this court growing out of the failure of Walker & White and their successor, the Michigan Mortgage Company of St. Johns in the 90's are controlling. See *Joy* v. *Vance*, 104 Mich. 97; *Bromley* v. *Lathrop*, 105 Mich. 492; *Trowbridge* v. *Ross*, 105 Mich. 598; *Wilson* v. *LaTour*, 108 Mich. 547; *Brooke* v. *Struthers*, 110 Mich. 562 (35 L. R. A. 536) ; *Wilson* v. *Campbell*, 110 Mich. 580 (35 L. R. A. 544) ; *Terry* v. *Durand Land Co.*, 112 Mich. 665; *Church Association* v. *Walton*, 114 Mich. 677. In one of these cases

(*Wilson* v. *LaTour.*) an actual general agency was established by the testimony but in the balance of the cases the facts are substantially the same as here. In those cases the notes and mortgages were payable at the office of Walker & White, or their successor, but this fact was held to be unimportant and not to create an agency in them for the persons who held the securities.   In those cases, as here, Walker & White, and their successor, for some considerable time collected the money as it fell due and remitted it to the owner of the securities.   There, as here, they later failed so to do.   We may well say as did Mr. Justice MONTGOMERY, speaking for the court, in *Bromley* v. *Lathrop, supra:*

"The case is a hard one, in which one of two honest parties must suffer through the rascality of a third, but we are unable to see in what respect the complainant has been guilty of any act which ought to estop him from relying upon his ownership and possession of the securities, and from insisting upon payment."

We shall not discuss these cases further than to say that the instant case can not be distinguished from them.

The decree must be reversed and one here entered in conformity with the prayer of the bill.   Plaintiff will have costs.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.