# Wytheville.

W. Ludwell Baldwin and A. M. Winingder v. H. C.
Adkerson; A. P. Grice, Trustee; John D. Gordan
and Theo. S. Garnett, Receivers of Guaranty
Title and Trust Corporation; and
Seaboard Citizens National
Bank.

June 18, 1931.

Present, Campbell, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Michael Cooper,* for the appellants.

*Wm. J. Hosier,* for the appellees.

EPES, J., delivered the opinion of the court.

This is an appeal from a decree of the Court of Law and Chancery of the city of Norfolk, entered March 25, 1930, dismissing a bill in chancery filed therein at first September rules, 1929, by W. Ludwell Baldwin and A. M. Winingder against H. C. Adkerson, A. P. Grice, trustee, John D. Gordan and Theo. S. Garnett, receivers of Guaranty Title and Trust Corporation, and Seaboard Citizens National Bank.

The facts as they appear from the record are as set forth below.

Guaranty Title and Trust Corporation had been in business in Norfolk since about 1917, and was engaged principally in

lending money on notes secured by deed of trust on real estate, guaranteeing the payment of principal and interest of such notes, and selling them to whomsoever it could get to buy them.

The notes taken by it for loans, and the interest coupons thereto attached, were generally made payable at its office, the notes being made payable "to bearer, or if registered, to the registered owner hereof," and the interest coupons "to bearer."

The form of guarantee used by it in making sale of such notes reads as follows: "For value received we hereby guarantee the payment of this note, and also the payment of the attached interest coupons as the same fall due, upon conditions that, at our option, we are to be allowed twelve months from date of maturity within which to pay the principal amount, but with interest in the meantime at the rate named in this note should we require this twelve months' extension."

It was its custom when a note or interest coupon, which was payable at its office and so guaranteed by it, was presented there for payment to pay the same upon presentation, whether the maker had funds there to pay it or not. Usually such note or interest coupon would be presented for payment at the office of the corporation and paid without there being any intercourse or dealing between the borrower and the transferee of the note or coupon, and usually without the borrower being advised to whom the corporation had transferred the note, or that it had transferred it to anyone.

It kept a card index of the notes sold by it, and it was its regular custom to write a letter to the holder of each such note a month before the maturity thereof, stating when the note would be due; that it should be presented for payment at the Guaranty Title and Trust Corporation, and that it would be glad to have him reinvest the proceeds either in the same notes or some other notes. The names of the makers of the note, but not their addresses, were given in these letters.

It was its custom to accept payment of a loan made by it whether it had possession of the note or notes evidencing it or

not, and also to make renewals of such loans at or after maturity, when it desired to do so, and accept renewal notes therefor, without considering the transferees of the notes evidencing the loan, even though it did not have possession of them.

When a loan was renewed, without waiting for the presentation for payment of the notes for which renewals had been taken, it would hypothecate or sell the renewal notes taken by it and place the proceeds from such sale or hypothecation in the general funds of the corporation. Then, when the notes for which renewals had been accepted were presented for payment, it would pay to the holders thereof the amount due thereon out of the general funds of the corporation, and mark the note "renewed."

There is some evidence tending to show that when renewal notes were thus accepted by the corporation it would notify the holders of the renewed notes that it had renewed the notes and request them to present the notes held by them for payment, but there is no evidence that this was done in the instant case.

However, there is no evidence that the customs of the Guaranty Title and Trust Corporation with reference to accepting payment of loans or of making and handling renewals of loans were in accordance with any general custom of corporations and persons doing a similar business in Norfolk, or were known to the public generally, or to the bankers of Norfolk, or to any of the defendants in this cause.

On April 11, 1924, Guaranty Title and Trust Corporation loaned to W. Ludwell Baldwin and A. M. Winingder $3,500.00. This loan was evidenced by four notes, one for $500.00 and three for $1,000.00 each, dated April 11, 1924, drawn by Baldwin and Winingder, payable three years after date "to bearer, or if registered, to registered owner hereof." These notes and the semi-annual interest coupons thereto attached were made payable at the office of the Guaranty Title and Trust Corporation; and by deed of trust, dated April 11, 1924, Baldwin and

Winingder and their wives conveyed to A. P. Grice, who was the president of Guaranty Title and Trust Corporation, certain real estate in the city of Norfolk, in trust to secure the payment of said notes and "the payment of note or notes, bond or bonds given in renewal, in whole or in part," of said debt.

It then endorsed on said notes its guarantee of the payment thereof, using the form heretofore quoted, and sold them; but to whom they were sold does not appear from the pleadings or the evidence.

When these notes fell due the makers applied to Guaranty Title and Trust Corporation for a renewal of the loan, which it made, and accepted from them their four renewal notes for like amounts and of like tenor, payable one year after date. When the original notes were presented for payment it paid to the holders thereof the amount due thereon, took up the original notes, marked them renewed, and held and still holds them in its possession. The renewal notes taken by it were passed to its bond department for sale or hypothecation. Presumably they were sold or hypothecated, though the evidence is not positive on this point and gives no indication of to whom they were sold or hypothecated.

When these first renewal notes fell due Baldwin and Winingder again applied to Guaranty Title and Trust Corporation for a renewal of the loan, which it made. It accepted from them as a second renewal of said loan four notes, one for $500.00 and three for $1,000.00 each, dated April 11, 1928, drawn by Baldwin and Winingder, payable one year after date, "to bearer, or if registered, to registered owner hereof," which notes and the interest coupons thereto attached were made payable at the office of Guaranty Title and Trust Corporation. Each of these notes states on its face that it was one of a series of notes secured by said deed of trust dated April 11, 1924.

Guaranty Title and Trust Corporation then sold these four second renewal notes to different parties and paid to the holder or holders of the first renewal notes the amounts due thereon.

Note No. 2 for $1,000.00 of said second series of renewal notes was sold to H. C. Adkerson on April 16, 1928, and is still held by him. It was not registered and has always remained payable to bearer.

The record discloses no knowledge by Adkerson of the transactions had by Guaranty Title and Trust Corporation relating to the handling of the original notes or the first series of renewal notes, nor any transaction of any kind which ever took place between Adkerson and Guaranty Title and Trust Corporation other than the purchase of this note. The semi-annual interest coupon, due October 11, 1928, attached to the note held by Adkerson was paid, but the evidence is silent as to the time of payment and the circumstances connected with it.

While the evidence on the point is not positive, for the purposes of this case, we accept it as proven that about a month prior to April 11, 1929, Guaranty Title and Trust Corporation wrote Adkerson its usual form letter calling his attention to the fact that this note held by him would be due April 11, 1929, advising him that it should be presented for payment at Guaranty Title and Trust Corporation, and stating that it would be glad to have him reinvest the proceeds either in the same notes or some other notes, and that Adkerson received this letter.

Adkerson did not present the note or the second interest coupon thereto attached for payment at the Guaranty Title and Trust Corporation when they fell due on April 11, 1929, or at any other time before it became insolvent and was placed in the hands of receivers on June 25, 1929, nor did he communicate with or make demand upon Baldwin and Winingder for payment thereof until after June 25, 1929.

The officers of the Guaranty Title and Trust Corporation testify that it would have paid to Adkerson the amount due thereon had it been presented on its due date or at any time up to a few days prior to June 25, 1929. But there is no evidence to show that on April 11, 1929, Baldwin and Winingder had

any funds at the Guaranty Title and Trust Corporation, or had made any arrangements with the Guaranty Title and Trust Corporation to pay the note held by Adkerson, had the same been presented for payment on that date; and, on the contrary, the inference from the facts proven is that they did not have the funds there on the due date of the note to pay the same.

On May 6, 1929, Baldwin and Winingder arranged with Guaranty Title and Trust Corporation to make to them a new loan for $3,500.00 to pay off said four second renewal notes which had fallen due on April 11th, the new loan to be secured by a new deed of trust. The new loan, however, was not made until May 15, 1929, when Baldwin and Winingder executed their six notes, five for $500.00 each and one for $1,000.00, and delivered them to Guaranty Title and Trust Corporation, but there is some question as to whether a new deed of trust securing these notes was ever executed. These notes were antedated April 11, 1929, and drawn payable to bearer one year after date. It was understood between Baldwin and Winingder and the corporation that the proceeds of this loan should be used to pay off their notes then outstanding evidencing the then existing loan.

The three second renewal notes of Baldwin and Winingder, dated April 11, 1928, which had been sold by the Guaranty Title and Trust Corporation to persons other than Adkerson, were presented for payment at the office of Guaranty Title and Trust Corporation at unidentified times prior to June 25, 1929, and paid by it, but whether before or after May 15, 1929, does not appear. The note held by Adkerson was not presented for payment prior to June 25, 1929, and has never been paid by Guaranty Title and Trust Corporation, which was on June 25, 1929, adjudged insolvent and placed in the hands of John D. Gordan and Theo. S. Garnett, receivers appointed by the court.

What entries, if any, were made on the books of the Guaranty Title and Trust Corporation of the proceeds of the new loan to Baldwin and Winingder consummated on May 15,

1929, does not appear from the evidence. Three of the notes, dated April 11, 1929, aggregating $2,000.00 in amount, were sold by the corporation to customers; two of them, notes No. 3 and No. 4 for $500.00 each were pledged by it with the Seaboard Citizens National Bank as collateral security for certain collateral trust certificates issued by Guaranty Title and Trust Corporation, as is hereafter set forth; and one of them for $500.00 was pledged with Seaboard Citizens National Bank as collateral security for a direct loan by it to the Guaranty Title and Trust Corporation.

Baldwin and Winingder allege that at the time they delivered to Guaranty Title and Trust Corporation the six notes dated April 11, 1929, they thought that it was the holder of their then outstanding notes. But neither of them testified in the case, and it does not appear from the record what, if any, inquiry they made as to this, or what, if anything, was told them with reference to who held them, or had possession of them, or whether at this time any of the then outstanding notes were delivered to them. However, the note held by Adkerson was not then exhibited or delivered to them; and there is no evidence that the note sold to Adkerson was ever in the possession of Guaranty Title and Trust Corporation for collection or otherwise, at any time after its sale to Adkerson on April 16, 1928, or that Adkerson ever expressly authorized Guaranty Title and Trust Corporation to act as his agent in the collection of either the principal of this note or the interest thereon, or for any other purpose.

Under date of December 1, 1926, the Guaranty Title and Trust Corporation had entered into a collateral trust agreement with the Citizens Bank of Norfolk, which has now become the Seaboard Citizens National Bank of Norfolk. This trust agreement provided for the issuance in series of notes made by the Guaranty Title and Trust Corporation, known as "Guaranty Title and Trust Corporation Collateral Trust Notes," which should be the direct obligation of the Guaranty

Title and Trust Corporation, be secured by first mortgage real estate notes deposited with said bank as collateral security therefor, and bear the certificate of said bank, as trustee, showing that they were so secured.

Under this agreement, upon the deposit with the bank of notes as collateral, the bank would certify and issue to the Guaranty Title and Trust Corporation collateral trust certificates in an amount equal to $100.00 of trust certificates for each $101.00 of collateral notes deposited with the bank. The collateral trust certificates so issued would then be sold by the Guaranty Title and Trust Corporation and the proceeds thereof used in its business.

Baldwin and Winingder allege in their bill that Guaranty Title and Trust Corporation deposited under this agreement with Seaboard Citizens National Bank two of the series of notes dated April 11, 1929, i. e., notes No. 3 and No. 4 for $500.00 each, drawn by Baldwin and Winingder; that the Seaboard National Bank then certified and issued to Guaranty Title and Trust Corporation an amount equal to 100/101 of the amount of said two notes of Baldwin and Winingder, and that Guaranty Title and Trust Corporation sold such collateral trust certificates so issued to it and used the proceeds thereof for the general purposes of its business.

The receivers of Guaranty Title and Trust Corporation and Seaboard Citizens National Bank in their answer neither admit nor deny these allegations, but call for strict proof thereof. All that appears from the evidence bearing on this point is:

At some unidentified time between May 15 and June 25, 1929, said notes No. 3 and 4 for $500.00 each, drawn by Baldwin and Winingder, dated April 11, 1929, were deposited with the Seaboard Citizens National Bank as collateral security under said collateral trust agreement, which still holds them. At the time the Guaranty Title and Trust Corporation was placed in the hands of receivers, on June 25, 1929, the aggregate amount of notes deposited with and held by Seaboard

Citizens National Bank under said collateral trust agreement was $340,000.00, which included said two notes drawn by Baldwin and Winingder. The total amount of collateral trust certificates outstanding under said trust agreement on June 25, 1929, was $331,500.00, all which had been sold or otherwise disposed of by Guaranty Title and Trust Corporation prior to June 25, 1929, except one certificate, No. M-532 for $1,000.00, dated June 15, 1929, payable June 15, 1930, which went into the hands of the receivers and was still in their hands when the testimony in this cause was taken.

Soon after the Guaranty Title and Trust Corporation was placed in the hands of receivers, Adkerson endeavored to collect from Baldwin and Winingder said $1,000.00 note and the interest coupons thereto attached, which were held by him, and threatened to sue him thereon and to foreclose said deed of trust of April 11, 1924, to enforce the payment thereof.

This bill was then filed by Baldwin and Winingder. After praying a temporary injunction against H. C. Adkerson and Grice, trustee, to preserve the *status quo* until there can be a final determination of this cause by the court, the prayer of the bill is as follows (the numbers in parenthesis being inserted by us for purposes of reference) :

(1) "That said Seaboard Citizens National Bank of Norfolk * * * be enjoined from selling, transferring or otherwise disposing of said notes No. 3 and No. 4 and interest coupons attached thereto * * *, and that it be ordered to deliver and return said notes and coupons to your complainants as and for the absolute property of your said complainants; (2) that this court * * * decree that the said H. C. Adkerson have no claim against your complainants and be forever enjoined from suing said complainants on the note and coupon held by him * * *, or from causing the deed of trust dated April 11, 1924, to be foreclosed for the payment of said note and coupons; (3) that your complainants be decreed a judgment against the said John D. Gordan and Theo. S. Garnett in their respective ca-

pacities of receivers of said Guaranty Title and Trust Corporation for any and all damages as may be determined sustained by your complainants by reason of the tortious conduct of said officers and directors of said Guaranty Title and Trust Corporation; and (4) that your complainants may have such other and further and general relief as may be suitable to their cause, and as to equity may seem meet."

None of the defendants introduced any evidence, and Adkerson did not testify in the cause.

The trial court adjudged that the plaintiffs were not entitled to any relief under their bill and dismissed it as to all defendants. From this decree the plaintiffs appeal, making two assignments of error.

The first assignment of error is that the court erred in holding that the appellants were not discharged from their liability to H. C. Adkerson upon their said note and interest coupon held by him and in not granting the injunction prayed for against him.

The contention of the appellants is that Guaranty Title and Trust Corporation was the agent of H. C. Adkerson to receive payment of this note and interest coupon; that when the appellants, on May 15, 1929, delivered to Guaranty Title and Trust Corporation their six notes, aggregating $3,500.00, evidencing the new loan which the corporation had agreed to make them for the purpose of providing funds to pay off their then outstanding notes, they placed in its hands the funds with which to pay the note and interest coupon held by Adkerson; and that thereby the note and interest coupon held by Adkerson were paid by them to the agent of Adkerson, which discharged them of all liability on account thereof. This position, we think, is not supported by the record, and the court did not err in refusing the relief prayed against Adkerson.

The general rule is that when the maker of a note either before, at or after its maturity, leaves or deposits with a bank or trust company at which his note is payable, but

which has not possession thereof, the funds with which to pay the note on presentation for payment, in the absence of actual or ostensible authority from the legal holder of the note to the bank or trust company to receive payment thereof for him, the bank or trust company is the agent of the maker to pay the note, and not the agent of the holder of the note to receive payment thereof, and this is true even though the bank or trust company may have been the original payee or holder of the note. See cases below cited.

■ The fact that a corporation engaged in the business of lending money makes a loan, takes the borrower's negotiable note therefor, which, with the interest coupons attached, is payable at its office, endorses the note or guarantees the payment of the principal and interest thereof, and sells and transfers it to another, does not of itself give such corporation either implied or apparent authority to receive payment of the note as the agent of the transferee, when the note is not in the possession of the corporation. If, under such circumstances, the corporation having no express authority to receive payment of the note, the maker pays it to the corporation without calling for and receiving surrender of the note, the liability of the maker thereon to the transferee is not thereby discharged, unless there are other facts and circumstances which, alone or in conjunction with these facts either lead to a reasonable conclusion that there was in fact a mutual assent between the corporation and the transferee that it should have authority to receive payment for him as his agent, or constitute an ostensible holding out by the transferee of the corporation as its agent to receive payment of the note and estop him from denying that such agency existed. *Bacot* v. *South Carolina Loan & Tr. Co.,* 132 S. C. 340, 127 S. E. 562; *State Nat. Bank* v. *Hyatt,* 75 Ark. 170, 86 S. W. 1004, 112 Am. St. Rep. 50, 5 Ann. Cas. 296; *Koen* v. *Miller,* 105 Ark. 152, 150 S. W. 411; *Wood* v. *Swan,* 206 Iowa 1198, 221 N. W. 791; *Nielson* v. *Westrom,* 46 Idaho 686, 270 P. 1054; *Monroe* v. *Kitterer;*

127 Okl. 212, 260 P. 479; *Rutherford* v. *Morgan*, 172 Minn. 433, 215 N. W. 842; *Chesaning St. Bank* v. *Branton*, 234 Mich. 263, 207 N. W. 826; 8 C. J., Bills and Notes, sec. 835 and sec. 837, 9 cases there cited; note, 21 L. R. A. (N. S.) p. 52, and cases there cited.

See also the following interesting series of decisions of the Michigan court, all arising out of the failure of Walker White and their successor, the Michigan Mortgage Company: *Joy* v. *Vance*, 104 Mich. 97, 62 N. W. 140; *Bromley* v. *Lathrop*, 105 Mich. 492, 63 N. W. 510; *Trowbridge* v. *Ross*. 105 Mich. 598, 63 N. W. 534; *Wilson* v. *La Tour*, 108 Mich. 547, 66 N. W. 474; *Brooke* v. *Struthers*, 110 Mich. 562, 68 N. W. 272, 35 L. R. A. 536; *Wilson* v. *Campbell*, 110 Mich. 580, 68 N. W. 278, 35 L. R. A. 544; *Terry* v. *Durand Land Co.*, 112 Mich. 665, 71 N. W. 525; *Church Assoc.* v. *Walton*, 114 Mich. 677, 72 N. W. 998. In *Wilson* v. *La Tour* an actual agency to receive payment was held to have been established by the testimony, but in all the other cases of the series payment to the mortgage company was held ineffectual to discharge the note.

██ Even if it be conceded that Adkerson, when he purchased this note, knew it was the custom of the Guaranty Title and Trust Corporation to pay upon presentation at its office, on or after maturity, notes and interest coupons there payable, the payment of which it had guaranteed, whether the makers thereof had funds there to meet them or not, was induced to purchase this note because of that custom, and when he presented his first semi-annual interest coupon for payment at its office he received payment thereof; inasmuch as he at all times retained possession of the note, these superadded facts are not sufficient to take the case out of the general rule above stated. Reliance by a holder of a note upon the fact that the guarantor of the note will pay, whether the maker of the note guaranteed pays or not, does not reasonably lead to the conclusion that the holder has constituted the guarantor his agent to receive payment of the note for him and dis-

charge the maker from liability thereon. Nor does the fact that the holder fails to present the note at or after maturity to either the guarantor or the maker reasonably lead to such conclusion. It may affect the rights of the holder to hold the guarantor on his guaranty, but it does not of itself confer an agency upon the guarantor to act for the holder.

There are many cases in which the course of dealings of the holder of a note himself with a bank or loan broker at whose office the note was payable, has been held to give the bank or loan broker implied authority to receive payment of the note as the agent of the holder, even though the bank or broker did not have possession of the note. See: *Easton* v. *Littooy*, 91 Wash. 648, 158 Pac. 531; *Wolford* v. *Young,* 105 Iowa 512, 75 N. W. 349; *Security St. Bank* v. *Soule*, 70 Mont. 300, 225 P. 127; *Land Mortgage Inv., etc., Co.* v. *Gillom*, 49 S. C. 345, 26 S. E. 990, 29 S. E. 203; *City Savings & Tr. Co.* v. *Peck*, 92 Vt. 310, 103 A. 1020; *Rehmeyer* v. *Lysinger*, 109 Neb. 805, 192 N. W. 337; *International Life Ins. Co.* v. *Bradley*, 114 Okl. 231, 246 P. 222; *Whitney* v. *Krasne*, 209 Iowa 236, 225 N. W. 245; *Kann* v. *Fish*, 209 Iowa 184, 224 N. W. 531; *Walmer* v. *Redinger*, 116 Kan. 580, 227 P. 329. But these cases have no application to the case at bar. No course of dealings between Adkerson and Guaranty Title and Trust Corporation are shown, and the record discloses no transaction or intercourse of any kind between these parties, except the bare fact that Adkerson purchased this one note, and perhaps that he presented one interest coupon at its office where it was payable and received payment thereof.

The appellants contend with earnestness that the custom and usage of the trade, and the custom of Guaranty Title and Trust Corporation with relation to the handling of such loans, gave rise to an implied authority from Adkerson to Guaranty Title and Trust Corporation to receive payment of this note for him.

In their petition they seem to contend that there is an es-

tablished general trade custom or usage that when a transaction of this kind is made, the corporation shall act as the agent of its transferee to receive payment of the note sold by it to him, but it is needless to discuss the effect the existence of such a custom would have in the case at bar, for the evidence is insufficient to establish the existence thereof.

So also they contend that it was a custom of Guaranty Title and Trust Corporation to renew and accept payment of loans made by it, even though it had sold the notes evidencing the loans, and though the notes had neither been presented for payment nor were in its possession. There is evidence that the corporation was in the habit of doing these things, but there is no evidence that Adkerson had any knowledge that such was the custom of this corporation, or had had any course of dealings with it which charged him with knowledge thereof, or that it was generally known that such was its custom.

The second assignment of error is that the court erred in not decreeing that the receivers of Guaranty Title and Trust Corporation took and held the collateral trust certificate No. M-532 for $1,000.00 impressed with a trust for the payment of the note held by Adkerson, and in not ordering the receivers to deliver it to the appellants.

The principle of law relied upon by the appellants is well established. Where money or property is intrusted to an agent for a particular purpose, it is impressed by the law with a trust in favor of the principal until it has been devoted to such purpose; and, if it be wrongfully diverted by the agent, such trust follows the fund or property in the hands of a third person and the principal is ordinarily entitled to pursue and recover it as long as it can be traced and identified, if no superior equities have intervened. This applies whether it is the identical property put into the hands of the agent or other property purchased by the agent with the proceeds, and even when it has been mixed with the mass of other property,

if not so as to be incapable of being distinguished. 2 C. J., Agency, sec. 567, p. 881; *Norfolk Overseers of Poor* v. *Bank*, 2 Gratt. (43 Va.) 548, 44 Am. Dec. 399. But in the instant case the evidence is insufficient to identify the collateral trust certificate M-532 as having been issued to the Guaranty Title and Trust Corporation by the bank for or at the time that Guaranty Title and Trust Corporation deposited the notes of the appellants as collateral security with the bank. It is just as probable that this certificate was issued at the time of the deposit of and against some other notes as against the notes of the appellants.

The decree of the trial court will be affirmed.

*Affirmed*