BISSELL *v.* DOWLING.

1. PRINCIPAL AND AGENT—AUTHORITY TO COLLECT MORTGAGE.

After an unrecorded assignment of a mortgage given to a mortgage company, the company continued to collect the interest, and eventually collected and receipted for the principal, the mortgagor supposing it still to own the mortgage, which in fact was in the possession of the assignee. The amount paid was credited by the company to the assignee's account. The assignee, not being informed of the payment of the mortgage, wrote soon after, urging the company to collect or foreclose the same. The company had previously collected large amounts, both of principal and interest, for the assignee, and had often reinvested the moneys so collected at its discretion. In the course of his correspondence with the company, he had urged collections on his mortgages generally, and had made inquiries indicating that the power to collect and discharge his mortgages was assumed by the company with his approval. *Held*, that the company was the general agent of the assignee, and authorized to receive payment of the mortgage in question.

2. SAME—RATIFICATION.

The owner of a mortgage ratifies the payment of the mortgage to a mortgage company as his agent, by accepting property from the company to apply upon a balance in his favor in his account with the company, to which he was aware the amount of the mortgage had been credited, and by claiming in receivership proceedings against the company that the money collected on the mortgage should be treated as a trust fund for his benefit.

Appeal from Osceola; McMahon, J.   Submitted April 21, 1898.   Decided July 18, 1898.

Bill by John H. Bissell against Thomas Dowling, Ella F. Dowling, and the First State Savings Bank of Evart, to foreclose a mortgage. The defendants filed answers in the nature of cross-bills, praying the discharge of the mortgage and the cancellation of notes collateral thereto. From a decree for defendants, complainant appeals. Affirmed.

*John H. Bissell* (*Charles A. Withey*, of counsel), *in pro. per.*

*C. H. Rose*, for defendants.

LONG, J.   March 26, 1888, defendants Dowling executed and delivered to Walker & White, of St. Johns, a mortgage of $300, due in five years, with interest at 7 per cent., payable semi-annually.   There was a commission mortgage also, and the whole debt evidenced by one principal and 10 coupon notes, payable at the office of Walker & White.   July 13, 1888, this mortgage was assigned to complainant; but the assignment was not put on record until February 6, 1894, and the mortgagors continued to pay the interest to Walker & White until 1889, when the firm of Walker & White was merged into the Michigan Mortgage Company; and interest thereafter was paid by the mortgagors to that company.   At each of those payments of interest, the coupon notes were marked "Paid," and surrendered to the mortgagors, either by Walker & White or by the Michigan Mortgage Company.   The mortgage became due in March, 1893, and the Dowlings borrowed the money from the defendant bank to pay it.   To secure this loan, the Dowlings gave to the bank a mortgage on the same lands.   The bank sent the money forward to the Michigan Mortgage Company, and it was receipted for by the company.   This money the Michigan Mortgage Company credited up to complainant on its books of account at the time it was received, in March, 1893.   No discharge of the mortgage was ever made.   In February, 1894, the Michigan Mortgage Company failed; and a receiver was appointed, who took charge of the business.   The Dowlings supposed, at the time this mortgage was paid by the loan from the bank, that Walker & White or the Michigan Mortgage Company owned the mortgage, as they had never heard of the assignment, and their coupon notes were always canceled by one or the other, and returned.   About one year after the Michigan Mortgage Company failed, the complainant wrote Mr. Dow-

ling, asking him to pay the mortgage. This was refused; and this proceeding was commenced to foreclose it, the complainant claiming that no interest had been paid upon it since September, 1892. The defense to the mortgage is:

1. That the Michigan Mortgage Company was the agent of complainant, and received the moneys on the mortgage for him.

2. That the complainant ratified the action of the Michigan Mortgage Company in receiving this money in discharge of the mortgage.

3. That the complainant is estopped by his own conduct from claiming that the mortgage has never been paid.

The court below filed a written opinion, in which he discusses several of the questions raised. On the question of agency that court says:

"During all the years from the time the mortgage was given until it was paid, the mortgage company was doing a large amount of business for complainant, and during that time handled for him over $100,000. Some of this money belonged to the complainant, and some to clients of his. During all this time the mortgage company collected large amounts of money, both of principal and interest, for complainant, and often reinvested it for him at discretion, with his full approval and consent. Sometimes these collections and reinvestments were made by order of complainant, and often without it; but, as far as the evidence discloses, whatever the company did was cheerfully ratified and approved by complainant. He wrote the company and Walker many letters during the period of five years from March, 1888, to March, 1893, concerning his mortgages, urging their prompt collection, and inquiring as to their status and the probability of payment being promptly made. At times he urged the company to collect in money on any of his mortgages generally, alleging that he was in need of money. On September 12, 1892, he wrote the company:

" 'Inclosed find for collection the following coupons, amounting to $450.20. I shall be glad to have a remittance now when anything is collected, as I am unusually short. I would like to have a little pushing done on some old delinquents, to get the pay or the land, or to have live renewals.'

"On July 6, 1891, he sent several coupons for collection, and then says:

"'The principal of several of these are due, and I should like other securities, or payment and discharge.'

"In another letter he writes:

"'I am obliged for your favor of the 31st, covering statement of new securities for $9,864.80.'

"In September, 1890, he writes:

"'Will you please send me memorandum showing whether the following mortgages are foreclosed or not.'

"Again:

"'In case of S. L. Randall mortgage, have you any record of a discharge, as I have in my hands the note, mortgage, and assignment? I ask the same question with reference to Thomas Dowling.'

"On November 20, 1893, he wrote:

"'If paid this week, or before December 1st, I should be glad to have them.'

"Shortly before the failure of the company, he wrote:

"'You will notice that there are in this list ten that are past due [mentioning among them the Dowling mortgage]. I shall hope on my return to have notice that a good share of them are either paid or renewed or foreclosed. Any collections that can be made between now and the 10th of February I shall be very glad to have promptly.'

"This letter was written after the Dowling mortgage had been paid to the company.

"I cannot attempt to set forth in this opinion all the letters introduced in evidence. There was a very large number of them, of about the same general tenor as those above quoted, and copies are hereto attached.

"The mortgage company kept an account with complainant on its books, crediting him with all moneys received from him or collected by it, and charging him with all securities taken. This account showed a balance in complainant's favor of from six to thirteen thousand dollars for a long time prior to the failure of the mortgage company. The complainant says he knew nothing of this account, and this is true in the sense that he had never seen it. But he certainly knew that an account was being kept, for in one of his letters he says:

"'I have your letter with the Mayville papers, $500 to the Newell estate. I assume that the difference between it and the $350 of the Olds mortgage will be charged to our account.'

"Bissell was informed, a few days before the failure of the company, as to the situation, and obtained from the company a deed of lands valued at $6,000, which he accepted and had credited to his account. The Michigan Mortgage Company paid complainant money collected by it for him at the rate of about $1,000 per month, both before and after the Dowling mortgage was paid to the company. Between January 1, 1892, and February 6, 1894 (the date of the failure), the mortgage company collected for Bissell $23,900 of the principal of mortgages, besides large amounts of interest. It was more than a year after he discovered that the company had received payment of this mortgage before complainant made any claim that Dowling must pay it again to him, and after failure he filed a petition in the circuit court at St. Johns, asking that the amount of money received on this mortgage be paid to him as a trust fund in the hands of the receiver."

We think this statement is in the main borne out by the record, and from which the court below was of the opinion that the Michigan Mortgage Company was the general agent of the complainant for the purpose of collecting money and investing it again, and consequently dismissed complainant's bill. We do not overlook the fact that the letter of January 26, 1894, referred to an inclosure of coupons. In this, we think, the court was not in error.

But, aside from this, it appears that, after complainant knew that Dowling had paid the mortgage to the Michigan Mortgage Company, and the moneys had been credited to him in his general account on the books of the company, he took a deed of $6,000 worth of property from the company, and applied that amount upon the account with the company. Complainant also thereafter filed a claim in the circuit court for Clinton county, in chancery, in the receiver proceedings, asking that this money which the Dowlings had paid be declared a trust fund in the hands of the receiver. This claim must have been based upon the proposition that the Dowlings had

paid the money to the proper parties, and was a recognition of the agency of the Michigan Mortgage Company.

It is claimed by the complainant's solicitor that complainant at all times held the notes and mortgage after the assignment to him. We are not satisfied that the record shows this; but, if that were true, still we think the evidence was quite conclusive that the mortgage company was the general agent of complainant, and authorized to receive this money, and that that action was ratified.

This case is not governed by *Church Association of Michigan* v. *Walton*, 114 Mich. 677, as suggested by counsel for complainant. In that case the moneys received by the mortgage company were credited on the company's books to the mortgagor, and did not go into the general account of the mortgagee, as in the present case. There are many other points of difference in the two cases. We think the case is governed by *Wilson* v. *La Tour*, 108 Mich. 547.

We think the court below was not in error in his findings, and the decree there entered must be affirmed.

The other Justices concurred.