## FEDERAL RESERVE BANK OF DALLAS v. HANNA et al.   (No. 392.)*

(Court of Civil Appeals of Texas. Waco. July 1, 1926. Rehearing Denied Oct. 7, 1926.)

**1. Principal and agent ⬤⟿123(10).**

That payment is made to one not in possession of note intended to be discharged is not conclusive of lack of authority, but is mere circumstance to be considered in determining authority to receive payment.

**2. Principal and agent ⬤⟿123(10).**

Authority, in fact, by person not in possession of note, to receive payment may be established by circumstances.

**3. Principal and agent ⬤⟿124(3).**

Where evidence is introduced tending to show authority of person to receive payment on note, issue should be submitted to jury.

**4. Principal and agent ⬤⟿124(3).**

In action on notes, evidence *held* sufficient to submit to jury question of agency of bank collecting notes to act as agent for plaintiff.

Appeal from District Court, Johnson County; Irwin T. Ward, Judge.

Action by the Federal Reserve Bank of Dallas against T. A. Hanna and another on notes. From a judgment for defendants, plaintiff appeals. Affirmed.

Chas. C. Huff, E. B. Stroud, Jr., and J. P. Dreibelbis, all of Dallas, for appellant.

G. O. Crisp, of Kaufman, and Keith & Prestridge and Chrisman & Chrisman, all of Cleburne, for appellees.

GALLAGHER, C. J. This suit was instituted by appellant, Federal Reserve Bank of Dallas, against appellees, T. A. Hanna and C. D. Dickerson, to recover on two promissory notes in the sum of $750 each, with interest and attorney's fees. The parties will be designated as in the trial court. Said notes were executed by defendant Hanna to defendant Dickerson and made payable at the First National Bank of Cleburne, hereafter called the Cleburne Bank, on July 1 and September 1, 1921, respectively. They were both duly indorsed by Dickerson and sold and delivered by him to said Cleburne Bank. Defendant Hanna was afterwards duly advised of said fact. On August 23, 1921, the Cleburne Bank notified defendant Hanna that said first note was past due, that said second note would be due September 1st, and that both were payable at its office. Defendant Hanna immediately wrote said bank asking that both notes be extended to November 1st. Said bank refused the request and declared it would take necessary steps to collect the same, if not paid within ten days. Defendant Hanna mailed to said bank his check for the amount due on both notes.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction November 24, 1926.

Said check was received by said bank on September 8, 1921, and was promptly cashed, and the proceeds appropriated by it to its own use. Said Cleburne Bank was indebted to the plaintiff and had long prior to the maturity of said notes indorsed and delivered the same to it as collateral security for such indebtedness.

Defendants, among other defenses, pleaded that said notes had been paid in full to the Cleburne Bank, and that said bank was the agent of plaintiff at the time of such payment and authorized to receive the same.

The case was submitted to a jury on special issues, and judgment was rendered for the defendants on the verdict returned in response thereto.

## Opinion.

The court submitted to the jury the following special issue:

"Was the National Bank of Cleburne the agent of the Federal Reserve Bank of Dallas in the collection of the two notes sued upon on September 8, 1921?"

The jury answered said issue, "Yes." Plaintiff objected to the submission of said issue on the ground that there was no evidence to authorize its submission. Plaintiff contends that the court erred in overruling said objection, and such contention is the principal issue presented in this appeal.

[1] Defendant's check for the amount of said notes was sent to the Cleburne Bank by mail, and he was not present at the time it was received to require production and surrender of said notes. While it appears that said notes were probably in said bank in the hands of the manager of plaintiff's loan department for collection at the time, it did not have actual possession of the same. The rule in such cases is laid down in 3 R. C. L. p. 1289, § 521, as follows:

"When payment is made to a person not having possession of the securities properly indorsed, the burden of showing that such person was authorized to receive payment for the creditor rests upon the party who makes the claim of payment."

See, also, 2 C. J. p. 624, and Rhodes v. Belchee, 36 Or. 141, 59 P. 117, 1119. The mere fact that the person to whom payment is made is not, at the time of payment, in actual possession of the securities or notes intended to be discharged, is not conclusive of lack of authority, but is a mere circumstance to be duly considered in determining the issue of agency or authority to receive such payment. 2. C. J. p. 625, § 262.

[2, 3] It is not, however, necessary that agency or authority in fact to receive payment be established by direct evidence. Like any other material fact in issue, it may be proved by circumstances. 2 C. J. p. 944, §

708; 21 R. C. L. pp. 820, 821, § 6; Daugherty v. Wiles (Tex. Com. App.) 207 S. W. 900, 901, 902; Stringfellow v. Brazelton (Tex. Civ. App.) 142 S. W. 937, 938, 939; Ward v. Powell (Tex. Civ. App.) 127 S. W. 851, 852; Wilson v. La Tour, 108 Mich. 547, 66 N. W. 474; Bissell v. Dowling, 117 Mich. 646, 76 N. W. 100. Where evidence is introduced tending to show agency or authority, the issue should be submitted to the jury. 2 C. J. p. 960, § 731; Bradstreet v. Gill, 72 Tex. 115, 116, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768.

[4] The Cleburne Bank was indebted to the plaintiff in the sum of more than $600,-000, which indebtedness was secured by notes owned by it and indorsed and delivered by it to the plaintiff as collateral. Mr. Gentry, the manager of plaintiff's loan department, was a witness in its behalf. He testified, on cross-examination, that he visited the Cleburne Bank every day from the early part of August, 1921, until it failed on or about the 18th day of October of that year, except on two occasions, when some one else from his department came in his stead; that during all that time he knew that the Cleburne Bank was borrowing heavily, was hard pressed for money, and was in what he termed an "extended" condition. He did not define that term, but, on consideration of his testimony as a whole, we understand that he meant thereby a condition of probable but not certain insolvency. He further testified that he knew during all that time that plaintiff did not care to send said bank any more notes through the mail for collection; that his daily visits to said bank were to collect said collateral notes and also checks on said bank; that he brought each day all notes that were due, all that were past due, and all that would mature in the next ten days; that he did not present said notes to the makers, but that he collected them by presenting them to Mr. Norwood, president of the Cleburne Bank; that the bank paid very few notes in comparison with the notes they had out. We quote from the testimony of said witness as follows:

"I don't know who would notify the various makers of the various notes I would bring down here to come in and pay the notes. Mr. Norwood never did *at my instance* notify anybody that their note was due and for them to come in and pay it. No one in the bank did that that I know of; *they didn't do anything at my instance.* I would come in there with my notes past due, but *I brought no pressure on them at all to go out and notify the makers of the notes to come in and pay up.* * * * As to whether I just sat down there and guarded the notes and didn't ask anybody to make any effort to collect those notes, I looked after the notes. That is what I was supposed to do. That was my business. I didn't give any of them away. *I never did see any of the makers of the notes myself*, go out and tell them to come in and pay them. *I never did write any of them notices.* * * * I didn't even suggest that to the National Bank

of Cleburne; *I assumed that he was looking after the collections himself."* (Italics ours.)

This witness further testified that he would not surrender a note to the employees of the Cleburne Bank and permit them to take it to the window and collect it and bring the money back to him, but that he required them to bring the money to him before he would part with the note. This testimony was contradicted by defendant's witness Randle, who testified that he was employed by the Cleburne Bank and that he kept the loan and discount ledger thereof during the time in question. We quote from his testimony as follows:

"It is a fact that, for several months prior to the failure of the National Bank of Cleburne, Mr. Gentry on practically every day came down to the National Bank of Cleburne and brought the notes that the National Bank of Cleburne had placed as collateral with the Federal Reserve Bank with him for collection. With reference to what the method was of collecting the notes, when customers of the bank would come into the bank and come up to the window and want to pay a note held by the Federal Reserve Bank, Mr. Gentry would bring his notes, together with his cash letter, every morning, and he would sit back in the back end of the bank, as well as I remember, and the notes were usually paid at the front, and if a man came in to pay his note we would have to go back and get the note from Mr. Gentry and come up and collect the money, and then take the money back to Mr. Gentry. * * * In collecting these notes from the makers of them and paying the money to Mr. Gentry, it is a fact that, on account of the financial condition of the National Bank at that time, the only money they were able to pay the notes with was from what they collected and what money was deposited in the bank."

We think the testimony above quoted, considered with all the other testimony in the case, raised a reasonable inference that the Cleburne Bank was notifying the makers of the notes pledged by it to plaintiff of the maturity of the same as they became due and endeavoring to collect the same, and that plaintiff knew of such action and not only acquiesced therein, but tacitly approved the same; that neither the Cleburne Bank nor plaintiff saw fit to disclose that said notes had been so pledged; that plaintiff intended that the Cleburne Bank should continue to collect said notes as the ostensible owner and holder thereof, but for its benefit; and that the procedure adopted by plaintiff was merely intended to keep it in touch with such collections and prevent a diversion or misapplication of the proceeds. The notes involved in this case were a part of said collateral and were, according to the testimony of the witness Gentry, brought by him to the Cleburne Bank for collection the same as the other notes testified about by him. We think the testimony was ample to justify the court

in submitting the issue of the agency of the Cleburne Bank in collecting said collateral. No complaint was made of the manner in which such issue was submitted. Plaintiff's contention that the court erred in submitting the same is overruled.

We have examined all the other contentions presented by plaintiff as ground for reversal and have concluded that they should be overruled.

The judgment of the trial court is affirmed.