### VENTING et al. v. CARRIGAN.

### No. 897.

Court of Civil Appeals of Texas. Waco. March 6, 1930.

Rehearing Denied April 17, 1930.

Walker & Baker, of Cleburne, and W. M. Odell, of Ft. Worth, for appellants.

E. A. Rice, of Cleburne, for appellee.

BARCUS, J.

Appellee instituted this suit against appellants on a note for $1,000, dated July 25, 1924, and due July 25, 1926. In June, 1926, one month before the note fell due, appellants paid the same to J. P. Williamson, who had possession thereof and who delivered the note to appellants. J. P. Williamson did not deliver the money to appellee and he did not know that same had been paid to J. P. Williamson until after Williamson's sudden death on December 18, 1926. The controlling issue is whether the payment to J. P. Williamson was binding upon appellee. The cause was tried to a jury and submitted upon the sole issue as to whether J. P. Williamson had the authority to collect the $1,000 note and deliver same to appellants, to which the jury answered "No."

The testimony relative to whether J. P. Williamson was authorized to collect said note and bind appellee was largely circumstantial. Appellee and appellants never met until after the death of J. P. Williamson. In 1925, appellants, Dr. and Mrs. Venting, went to Europe, where he took a postgraduate course at Oxford. They had made arrangements before leaving to borrow $1,000 on a particular piece of property and had given Mr. Davis, an attorney, a power of attorney to execute the necessary papers. After they had gone the parties failed to make said loan and Mr. Davis thereupon sought to borrow the $1,000 from other sources with different security. He went to J. L. Williamson, the father of J. P. Williamson, at Cleburne, and J. L. Williamson called appellee, 'Mr. Carrigan, and told him that he could make a loan to the Ventings and that they would give, as security therefor, a deed of trust, on a piece of property in Cleburne. J. L. Williamson and appellee inspected the property and appellee agreed to and did loan said $1,000 to the Ventings. The note and deed of trust were prepared by Davis and sent to appellants in England, where they were signed. On August 16, 1926, the $1,000 was deposited in the bank in Cleburne to the account of Mrs. Venting, by J. L. Williamson, and the deed of trust securing same was recorded and thereafter mailed to J. L. Williamson. When the annual interest fell due in July, 1925, Mrs. Venting wrote J. P. Williamson to pay the interest to Carrigan out of the rent money which they had on hand belonging to her. J. P. Williamson made the deposit in the bank to appellee's credit and indorsed on the back of said note the interest payment, and reported the payment thereof to appellee. In April, 1926, J. L. Williamson died.

In June, 1926, Mrs. Venting wrote J. P. Williamson, stating that she would like to pay the note before she left for her summer vacation, and J. P. Williamson took said note to Fort Worth and delivered same to appellants, and received a check therefor, payable to "J. P. Williamson, Agent." He used the money for his own benefit and did not pay the same to appellee. Neither did he report the collection of said note to appellee. When the annual interest fell due in July, 1926, J. P. Williamson deposited in the bank to appellee's credit the annual interest, and told appellee that appellants had paid the interest to him and that he had so deposited it, and stated to appellee that appellants desired the note extended until fall, which appellee readily assented to.

On December 18, 1926, J. P. Williamson died suddenly. After his death there was found in his bedroom the original of the deed of trust given by appellants to appellee, together with the insurance policy and a forged note similar to the original note, on which the two annual payments of interest had been indorsed, together with a note asking his

mother or his brother-in-law to destroy all of said papers and say nothing about them. The deed of trust, insurance policy, and forged note were delivered to appellee. He made an investigation and found that there was a forged release on record from him to appellants, releasing said deed of trust lien, which had been filed for record in June, 1926, at the time appellants had paid the original note to J. P. Williamson.

J. L. Williamson and son, J. P. Williamson, were engaged in the real estate business in Cleburne under the name of J. L. Williamson Land Company. The evidence shows that J. P. Williamson was working in said business with his father on a salary of $75 per month and his board, he being a single man about thirty-one years of age at the time of his death. The Williamson Land Company had for a number of years, as her agents, been renting several houses in Cleburne belonging to appellee Mrs. Venting, and looking after the repairs and upkeep thereof. According to appellants' testimony, neither of the Williamsons had ever been her agent to look after any of her business interests except the rental of said property, and so far as the record shows, appellants did not know at the time the loan was made that the Williamsons had anything to do therewith.

Appellee testified that he purchased his home through J. L. Williamson there in Cleburne in 1919, and that a few months thereafter he made a loan of some money through J. L. Williamson; and that from 1919, until J. L. Williamson's death in 1926, he made some twenty loans, all of them being made through J. L. Williamson; that he made one loan through J. P. Williamson after his father's death. J. P. Williamson prepared most of the notes and deeds of trust, and either J. L. Williamson or J. P. Williamson was usually named as trustee in the deeds of trust which were taken to secure appellee in the payment of the respective loans as made. A large number of the deeds of trust so taken, when recorded, were by the county clerk mailed to either J. L. or J. P. Williamson. Appellee had his private papers in a vault in the Williamson Land Company's office, to which J. L. and J. P. Williamson had constant access. Appellee kept all of his loan papers in a private box in said vault, the box, however, not being locked, and when the vault was open anyone had access thereto. Appellee testified that J. P. Williamson prepared for him a complete typewritten list of all the notes which he had in the Williamson Land Company vault, and that he, appellee, would make on said list a notation of the payment of interest or of any principal on any of said notes at the time he received same, and would occasionally go into the office and either he would credit the payments on said notes, or he would have J. P. Williamson to do so.

Among other loans which appellee had made was one to T. J. Cooper, who testified without dispute that he made his annual payments of interest for several years and a partial payment on the principal to J. L. Williamson, who had possession thereof and who credited the note therewith; that after J. L. Williamson died he made the final payment on said note to J. P. Williamson, who got for him the note and release from appellee. Mr. Cooper testified that while he delivered all the checks for the respective payments to either J. L. or J. P. Williamson, that the same were made payable to appellee. Appellee testified that all of said money was paid to him by J. P. Williamson.

As before stated, the annual interest for 1925, on the note in controversy, was deposited in the bank to appellee's credit by either J. L. or J. P. Williamson and he was notified thereof and acquiesced therein, and in 1926, the annual interest was collected and deposited in the bank to appellee's credit by J. P. Williamson and appellee acknowledged receipt thereof and told J. P. Williamson to tell appellants they could wait until fall to pay the note. Appellee never wrote appellants with reference to the annual interest being due, or about the note being due in 1926, and never took any action, so far as the record reveals, relative to the collection of said note or interest. After J. L. Williamson's death appellee told Mr. Lilly that he was going to and he did continue to do business with J. P. Williamson. He made one loan through him and several extension agreements were prepared by J. P. Williamson, and, after same had been recorded, were by the county clerk mailed to J. P. Williamson. J. P. Williamson collected and reported to appellee the final payment on the Cooper note, and collected and reported the annual interest payment in 1926 on the note of appellants, said collections being received by appellee without any suggestion on his part that J. P. Williamson was not authorized to collect same.

■ On the theory that they had made a prima facie showing that J. P. Williamson was the agent of appellee and authorized to collect said note, appellants offered to prove by themselves that while they were in Europe, in 1925, they received a letter from J. P. Williamson, stating that the annual interest would be due on a certain date, and that in response thereto they wrote J. P. Williamson to pay appellee the annual interest out of the rental money that the Williamson Land Company had on hand belonging to Mrs. Venting; and further, that at the time J. P. Williamson brought the note to them in June, 1926, and they paid same, that he told them that appellee had asked him, J. P. Williamson, to collect the note and take the check in his, J. P. Williamson's name, and while in Fort Worth consummate another loan for

appellee which J. P. Williamson told appellants he could make and for that reason appellee was willing for the note to be paid off a month before it was due; and further, that J. P. Williamson told them he would, and a few days thereafter did send them a release to said note and deed of trust securing same. This testimony was excluded by the court on objection made by appellee that same was hearsay and not binding upon him. Appellants assign error to the action of the trial court in excluding said testimony. We sustain these assignments. We think appellants had made a prima facie showing that J. P. Williamson was appellee's agent to collect said note, and the courts have uniformly held that where a prima facie showing of agency has been established, then the acts and declarations of the agent in transacting the business of his alleged principal are admissible, in order for the jury to have all of the facts before them to determine the scope of said agency. Madeley v. Kellam (Tex. Civ. App.) 135 S. W. 659; Lane v. Sullivan (Tex. Civ. App.) 286 S. W. 541; Park v. Sullivan (Tex. Civ. App.) 12 S.W.(2d) 265.

■ Appellants requested the trial court, in connection with the issues submitted to the jury, to give the following instruction: "You are instructed that the question of the authority of J. P. Williamson to collect the Venting note may be shown by circumstantial evidence, and is a fact to be determined by you from all the facts and circumstances in the case."

They assign error to the refusal of the court to give same. We sustain this assignment. Almost this identical question was involved in the case of Parr v. Gardner (Tex. Civ. App.) 293 S. W. 859, 864 (error dismissed) and the court there held that where the parties were attempting to show a conspiracy, that they were entitled to an instruction that a conspiracy could be proved in law by circumstantial evidence, and quoted with approval the following:

"'Where a litigant relies on circumstantial evidence, it is proper, and it is his right, to have the court charge the jury that they may consider that character of testimony in determining the issue.' Jones v. Hess (Tex. Civ. App.) 48 S. W. 46, 47; Rounds v. Coleman (Tex. Civ. App.) 214 S. W. 496, 497; Rowley v. Braly (Tex. Civ. App.) 286 S. W. 241, 245."

■ Appellants further complain of the action of the trial court in refusing to define apparent agency, or implied agency, or ostensible agency, and in failing to instruct the jury that J. P. Williamson would be the implied or apparent or ostensible agent of appellee, if appellee's actions relative thereto had been such as would authorize appellants to so believe. Article 2189 of the Revised Statutes provides specifically that the trial court is required in submitting special issues to the jury, to submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on said issues. Under said statute our courts have uniformly held that where the trial court is requested, it is reversible error for it to refuse to give the explanations and definitions as required by said statute. Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570; Texas Pacific Coal & Oil Co. v. Stuard (Tex. Civ. App.) 7 S.W.(2d) 878 (error refused); Edmonson v. Tinsley (Tex. Civ. App.) 15 S. W.(2d) 118. What it takes to constitute apparent or express authority or ostensible authority in a person to collect a note is fully discussed in Brown v. Guaranty Securities Co. (Tex. Com. App.) 265 S. W. 547, and authorities there cited; and also in Federal Reserve Bank v. Hanna (Tex. Civ. App.) 287 S. W. 274 (error dismissed), and authorities there cited. The submission of the issue as given by the trial court as to whether J. P. Williamson was the agent of appellee with authority to collect the note, is correct as an abstract proposition of law. As applied to the facts in the case at bar, the jury were without chart or compass of any method or rule to be used in determining whether J. P. Williamson was in fact the agent of appellee. Appellants were entitled to have the court instruct the jury what was meant by apparent, implied, and ostensible agency, and how same could be determined by them.

■ Appellants complain of the action of the trial court in refusing to permit them to introduce in evidence that portion of the city directory of Cleburne which showed that J. L. Williamson Land Company was composed of J. L. and J. P. Williamson. We do not think there was any error in the court's action in excluding this testimony. It was clearly hearsay.

■ Appellants further complain of the action of the trial court in refusing to permit Mr. Davis, the attorney who was seeking to borrow the original $1,000 for appellants, to testify that he went to several other parties, naming them, seeking to obtain the $1,000, before he went to J. L. Williamson to secure same. There was no error in the trial court's excluding said testimony. Neither appellee nor appellants knew anything about the solicitation by Mr. Davis of other parties and same was wholly irrelevant and immaterial.

For the errors indicated, the judgment of the trial court is reversed, and the cause is remanded.